# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) Criminal Action No. 2:01-00007-KD-C |
| | ) |
| TABITHA BURKS GRAY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This action is before the Court on Defendant Tabitha Burks Gray's Petition for Relief under the First Step Act of 2018 and exhibits in support (doc. 395; doc. 395-1),[1] the United States' response (doc. 398), and Gray's replies (docs. 402, 404).[2] Upon consideration, and for the reasons set forth herein, Gray's Petition (doc. 395) is DENIED without prejudice. To the extent that Gray's Petition is based upon asthma combined with potential exposure to Covid-19 (doc. 404), the motion is DENIED without prejudice for failure to exhaust.

I. Background

In October 2020, Gray and her co-defendants robbed a bank in Greensboro, Alabama. Gray and co-defendant Felicia Jackson entered the bank wearing masks and carrying shotguns. They shouted orders to the employees. While walking to the vault, co-defendant Jackson shot and killed a bank employee who was kneeling on the floor. Gray guarded the door. After obtaining money from the vault, Gray and Jackson fled in a getaway car with two other co-defendants.

---

[1] Gray's Application to Proceed in District Court without Prepaying Fees or Costs (doc. 396) is MOOT. No fees or costs are associated with filing a First Step Act Motion.

[2] Gray's motion for enlargement of time to file her reply (doc. 403) is GRANTED.

In 2001, Gray was indicted with four codefendants in a multiple count indictment for offenses related to the bank robbery. She pled guilty to Count 1 of an information charging bank robbery in violation of 18 U.S.C. § 2113(a) and to Count 3 of the indictment charging use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). In June 2002, she was sentenced to a total term of 360 months composed of 240 months for the bank robbery conviction and 120 months, consecutive, for the firearms conviction (doc. 215). Because the firearm was discharged during the offense the 120-month sentence was mandatory. 18 U.S.C. § 924(c)(1)(A)(iii).

Gray was also arrested by Hale County, Alabama authorities and charged with capital murder and robbery. In January 2002, she pled guilty to murder and was sentenced to life with parole. The state circuit court ordered her sentence to run concurrently with any yet to be imposed federal sentence and that the state sentence would be served in the federal institution (doc. 400, p, 9-10).

Gray is now 42 years old and presently incarcerated at FCI Hazleton in Bruceton Mills, West Virginia. Her estimated release date is June 3, 2028.

II. Section 403 of the First Step Act of 2018[3]

In her reply, Gray clarifies that she is seeking relief under both § 403 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018) and 18 U.S.C. § 3582(c)(1)(A) (doc. 402, p. 1) ("my motion sits before you in my request for a sentence reduction under the new section of Compassionate Release and under the First Step Act. The issues I addressed were separate but when the Government opposed, they put them together as one."). With respect to

---

[3] Gray mistakenly cites to § 404 of the First Step Act. That section applies to offenses involving crack cocaine. She also mistakenly cites to 21 U.S.C. § 841 and 846. However, these statutes apply to controlled substance offenses.

the First Step Act, Gray argues that she "received an unusually long sentence under a statutory provision that Congress has since found too punitive but has not made retroactively applicable" (doc. 395, p. 15). Gray cites to 18 U.S.C. § 924(c). (Id.).

Gray correctly states that she was sentenced under 18 U.S.C. § 924(c). However, Gray was convicted and sentenced for one firearms offense. She was sentenced under § 924(c)(1)(A). That section was <u>not</u> amended by § 403 of the First Step Act. Congress amended § 924(c)(1)(C), which requires a mandatory consecutive sentence for a second or subsequent firearms conviction.[4] The statute that Congress amended was not applied to her. For these reasons, to the extent that her motion is based on § 403 of the First Step Act, the motion is DENIED.

### III. Compassionate release

Previously, only the Warden could move the courts for compassionate release and the Bureau of Prisons would determine the extraordinary and compelling reasons that justify making the motion. The First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to allow a prisoner to file a motion for compassionate release. P.L. 115-391, 132 Stat. 5194, § 603 (Dec. 21, 2018). Therefore, Gray has now filed her motion for the Court to reduce her sentence pursuant to the "Compassionate Release Statute in 18 U.S.C. § 3582(c)(1)(A)(i)" based on extraordinary and compelling reasons (doc. 395, p. 3).

#### A. Exhaustion

With respect to her original Petition (doc. 395), Gray states that she "has exhausted her administrative remedies, or has been denied Compassionate Release and more than 30 days have elapsed since the date of that denial" (doc. 395, p. 16; doc. 402, p. 2 (stating that she filed her

---

[4] (a) In General. Section 924(c)(1)(C) of title 18, United States Code, is amended, in the matter preceding clause (i), by striking 'second or subsequent conviction under this subsection' and inserting 'violation of this subsection that occurs after a prior conviction under this subsection has become final.'" Pub. L. 115-391, 132 Stat 5194, § 403(a).

motion after a "lapse of thirty days from receipt of denied request from the Warden"). If Gray filed her motion more than 30 days after denial, it must have been filed more than 30 days after receipt of the request by the Warden.

The United States argues that although the First Step Act allows inmates to file a motion, they must first exhaust their administrative remedies (doc. 398, p. 9). The United States argues that "the record reflects that Gray made an initial request, [but] it is unclear that she has pursued any appeal remedies available to her." (Id.).

Under the statute, the court may consider a defendant's motion if it is filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). Thus, the statute provides two methods for exhaustion.

Gray's "Request for Reduction in Sentence Form" is dated August 16, 2019 (doc. 398, p. 13-14). The Warden's "Response to Inmate" denying the Request is dated September 9, 2019. With her motion, Gray completed a Proof of Service stating that she mailed her motion through the prison mail system on November 15, 2019 (doc. 395, p. 16). The motion was docketed November 25, 2019. Based upon the information before the Court, the motion was filed "after . . . the lapse of 30 days from" the Warden's receipt. Since there is no evidence that Gray appealed the Warden's decision, the earlier of the two options would be the "lapse of 30 days from the receipt" of the request. Therefore, the Court may consider the motion.

B. Compassionate release

Gray moves the Court for compassionate release (doc. 395). In support, Gray presents her interpretation of the history and purpose of compassionate release and concludes that the

Court now has the power to reduce her sentence despite the Bureau of Prisons' denial and to "grant sentence reductions on the full array of grounds reasonably encompassed by the 'extraordinary and compelling' standard set forth in the applicable statute." (Id., p. 12).

Acknowledging that § 3582(c)(1)(A) requires that the reasons for release must be consistent with the United States Sentencing Guidelines Policy Statement for compassionate release, § 1B1.13, Gray argues that the catch-all provision in Application Note 1(D), providing compassionate release for extraordinary and compelling reasons other than age, medical condition, or family circumstance, applies to her. (Id., p. 12-14). She also argues that the part of Application Note 1(D) stating the BOP must determine whether extraordinary and compelling other reasons exist is no longer binding on the Courts (Id., p. 14). She argues that the First Step Act allows the Court to make the determination and it is not "constrained or controlled by how the BOP Director sets its criteria" for a sentence reduction. (Id., p. 14).

Gray argues that her "sentence presents 'extraordinary and compelling reasons' for three reasons" (Id., p. 14-15). Gray first argues that she "received an unusually long sentence under a statutory provision that Congress has since found too punitive but has not made retroactively applicable" (Id.). However, as stated herein, Gray was not sentenced pursuant to 18 U.S.C. § 924(c)(1)(C), the statute amended by Congress in the First Step Act. "Second, [she] has suffered physical, mental, and sexual abuse while in the custody of the BOP" (Id., p. 15). Last, Gray asserts she has a "remarkable record of rehabilitation" which shows she would not be a danger to the public if released (Id.). In her reply and supplemental reply, Gray argues that her documented rape and physical, mental and sexual abuse by a prison guard, rising above that

5

circumstance, and assistance in an educational video for the BOP regarding prison rape;[5] her rehabilitation and the extensive number of educational and self-improvement programs in which she participated;[6] the length of time she has served (20 years) and the time remaining (8 years); her religious studies;[7] participation in an inmate companion program and inmate suicide watch program; and letters of commendation from prison work supervisors all support her motion for compassionate release (docs. 402, 404

The United States argues that Gray's reasons are not extraordinary and compelling; therefore, her motion should be denied (doc. 398). The United States points out that Congress requires that any reduction in sentence must be consistent with the Sentencing Commission's Policy Statement, but none of Gray's reasons come within the criteria of the Policy Statement (Id., p. 6-7). The United States also argues that rehabilitation alone is not sufficient to justify compassionate release (Id., p. 8). Last the United States argues that even if Gray could show extraordinary and compelling reasons, the relevant factors in 18 U.S.C. § 3553(a) weigh against compassionate release (Id., p. 9-10). The United States points out that Gray participated in a violent and deadly bank robbery; therefore, her sentence was "necessary to reflect the seriousness of Gray's conduct, to deter future criminal conduct, and to account for the nature and circumstances of the offense." (Id., p. 10).

---

[5]  In her reply and second reply, Gray states that she was raped and abused by a prison guard who ultimately pled guilty to an information and served two years of probation. Gray provided a copy correspondence from the Bureau of Prisons to support her statement (doc. 404, p. 9).

[6] Gray provides copies of numerous certificates of completion including coursework for computer applications (approximately 900 hours), office management (2,400 hours), and boiler mechanics apprenticeship (2,074 hours) (doc. 395-1, p. 6-9).

[7]  Gray provides numerous certificates of completion for religious courses including a course through Samford University.  She also provides documents showing that she has conducted religious services, written religious plays and music, and served as an inmate music director (doc. 395-1).

Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010).  Specifically, the "court may not modify a term of imprisonment once it has been imposed except" as set out in 18 U.S.C. § 3582(c). Among the statutory options, Gray moves pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), referred to as the compassionate release provision. In relevant part, the statute provides that the Court upon motion of a defendant "may reduce the term of imprisonment … after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction" . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

However, "extraordinary and compelling reasons" for a sentence reduction are not defined in the statute.  Instead, Congress gave the Sentencing Commission the duty to promulgate general policy statements regarding sentence modifications pursuant to 18 U.S.C. § 3582(c)(1)(A) and stated that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).  Congress also stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

Before the First Step Act, the Sentencing Commission promulgated the following Policy Statement:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

>(1) (A) Extraordinary and compelling reasons warrant the reduction; or
>
>(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
>(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>(3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

The Application Notes to the Policy Statement include four examples of extraordinary and compelling reasons to consider reduction of a sentence under § 3582(c)(1)(A). The defendant's medical condition may qualify if certain criteria are met. U.S.S.G. § 1B1.13 cmt. n. 1(A). Specifically, if the

>i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>(ii) The defendant is—
>
>>(I) suffering from a serious physical or medical condition,
>>
>>(II) suffering from a serious functional or cognitive impairment, or
>>
>>(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. §1B1.13 cmt. n. 1(A).

Gray does not allege that she is terminally ill, has as serious physical condition or serious functional or cognitive impairment, or that her ability to provide self-care in the facility is

diminished because of the aging process. However, in her supplemental reply she alleges a "well-documented respiratory problem from asthma which results in reduced lung function" (doc. 404, p. 3).[8]

Generally, an argument raised for the first time in a reply will not be considered by the courts. See United States v. Oakley, 744 F.2d 1553, 1556 (11th Cir. 1984) ("Arguments raised for the first time in a reply brief are not properly before the reviewing court."). Additionally, as discussed *infra*, Gray did not include asthma as a reason in her Request to the Warden. However, the Court will address this allegation as it relates to her original Petition.

While asthma may be a serious medical condition, Gray states that her asthma "initially caused her to be assigned" to a federal medical center twenty years ago when she entered federal prison (doc. 404). Gray did not provide any information as to whether she is currently treated for asthma or whether she has been treated since early 2000. In the March 26, 2019, Individualized Reentry Plan and Program Review, her "Current Care Assignments" as of July 2013, were "Stable, Chronic Care". Her "Current Medical Duty Status Assignments" were as follows:

| Assignment | Description | Start |
| --- | --- | --- |
| Ath Restr | No Sports/No Weight Lifting | 10-19-2015 |
| Lower Bunk | Lower Bunk Required | 06-19-2018 |
| Reg Duty | No Medical Restr--Regular Duty | 06-05-2018 |
| Soft Shoes | Soft Shoes Only | 09-25-2018 |
| Wgt 15 Lb | Weight-No Lifting Over 15 Lbs | 03-23-2017 |
| Yes F/S | Cleared for Food Service | 09-11-2018 |

(doc. 395-1, p. 9).

---

[8] Gray's argument that her sentence should be reduced because her asthma places her at greater risk of serious injury or death should she contract the Covid-19 virus is discussed *infra*.

Arguably, asthma could result in "Chronic Care" but there is no specific evidence that Gray has asthma. None of the descriptions above indicate a restriction based on asthma. Gray as the movant, bears the burden of establishing the existence of extraordinary and compelling reasons for compassionate release. See United States v. Rodriguez-Orejuela, No. 03-CR-20774, 2020 WL 2050434, at *5 (S.D. Fla. Apr. 28, 2020) ("In seeking a reduced sentence under this framework, the defendant 'bears the burden of establishing that compassionate release is warranted.'") (quoting United States v. Heromin, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (citing United States v. Hamilton, 715 F.3d 328, 341 (11th Cir. 2013)). With respect to asthma, Gray has not met her burden.

The district court may consider the defendant's age (at least 65 years old), and whether the defendant "is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." Id., cmt. n. 1(B). Although Gray has served more than 10 years of her sentence, she is 42 years old.

The district court may consider the defendant's family circumstances with regard to the care of minor children or care of an incapacitated spouse or partner. Id., at cmt. n. (1)(C). Gray does not indicate that she has minor children or an incapacitated spouse or partner, who need her assistance.

Last, the district court may consider "Other Reasons", if there exists "in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)", as determined by the Director of the Bureau of Prisons. Id., cmt. n. (1)(D). Gray argues that she has shown three reasons that fall within the parameters of subparagraph (D): The length of her sentence, the physical, sexual and mental

abuse she suffered in prison, and extensive rehabilitation. In its present version, subparagraph (D) "leaves identification of other 'extraordinary and compelling reason[s]' to the Director of the Bureau of Prisons." United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at * 3 (D. Me. July 11, 2019). But now that the First Step Act allows the inmate to file a motion for compassionate release without the BOP's support, it is unclear what "other" reasons can be relied upon for compassionate release. However, the Court finds that until the Sentencing Commission amends its Policy Statement "those other extraordinary and compelling reasons should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release." United States v. Fox, 2019 WL 3046086, at *3. Gray's reasons are not comparable or analogous. Accordingly, her motion is denied, but without prejudice to renewal should the Sentencing Commission, "as a result of the First Step Act, adopt[] a revised policy statement that contains provisions more favorable to [his] circumstances." United States v. Fox, 2019 WL 3046086, at *4.

IV. Covid-19 and asthma

In her supplemental reply (doc. 404), Gray argues for the first time that possible exposure to Covid 19 in combination with her asthma provide an extraordinary and compelling reason why she should be released from prison. She argues that imprisoned persons are at greater risk of contracting the virus because they live in close quarters, inhabit communal spaces for eating, etc., and "are nearly always in close contact with other people." (Id., p. 4). She also argues that "[t]here are numerous reports of prisoners and prison staff becoming infected and falling ill. Given [her] compromised health, it is highly likely that if she is infected, the results could be life-threatening." (Id.).

As previously stated, an argument raised for the first time in a reply will not be considered by the courts. However, the Court will address Gray's new argument to the extent necessary to determine the Court's authority to consider the argument for compassionate release.

As previously stated, the Court may consider Gray's motion if it is filed "after the [she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).  Gray has not presented any evidence that she made a request to the Warden for compassionate release based on her asthma and fear of exposure to Covid 19.  Since she has not complied with the statute, the Court lacks authority to consider her motion. Thus, her motion is dismissed without prejudice.  See United States v. Mollica, 2020 WL 1914956, at *6 (N.D. Ala. Apr. 20, 2020) ("For a prisoner to file a motion for compassionate release under § 3582, the prisoner must first exhaust administrative remedies by seeking relief from the warden and having such relief either declined or ignored. [ ] While Ms. Mollica properly pursued administrative relief before she filed her first motion for compassionate release based on her transabdominal mesh and fibroid, she has provided no indication that she exhausted her administrative remedies regarding her complaint about COVID-19. Therefore, she cannot properly bring her motion to this court." (citing United States v. Raia, 954 F.3d 594, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) ("denying a motion for compassionate release based on the COVID-19 pandemic because the inmate had not complied with the statute and exhausted administrative remedies")).

**DONE** and **ORDERED** this 4th day of May 2020.

s / Kristi K. DuBose  
**KRISTI K. DuBOSE**  
**CHIEF UNITED STATES DISTRICT JUDGE**
