# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **vs.** | ) | **Criminal Action 2:01-00007-KD-C** |
| | ) | |
| **TABITHA BURKS GRAY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

This action is before the Court on Defendant Tabitha Burks Gray's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A),[1] and supplement in support (docs. 428, 429). Upon consideration, and for the reasons set forth herein, the motion is DENIED.[2]

I.   <u>Background</u>

In October 2001, Gray and her co-defendants robbed a bank in Greensboro, Alabama. Gray and co-defendant Felicia Jackson entered the bank wearing masks and carrying shotguns. They shouted orders to the employees. While walking to the vault, co-defendant Jackson shot

---

[1] Gray also filed a release plan (doc. 428-1; doc. 428-5, p. 7); 2021 Individualized Needs Plan Program Review which lists the classes she has taken (doc. 428-4, p. 45-50); numerous certificates of achievement (doc. 428-7, p. 9, 17; doc. 428-5, p. 7-15, 31-38, 40-45), numerous commendations and certificates of appreciation (doc. 428-5, p. 16-18, 27-30, 39; doc. 428-7, p. 2-8, 12-14, 18); resume including a list of her educational, personal, and religious achievements and work history (doc. 428-5); letters in support of early release (doc. 428-7, p. 10-11), and petition for pardon prepared by the Advocacy Place with supporting signatures (doc. 428-6).

[2] Gray's request for appointment of counsel is denied (doc. 428, p. 6). Defendants do not have a constitutional or statutory right to counsel for "motions filed under § 3582; therefore, 'the decision to appoint an attorney is left to the discretion of the district court.'" <u>United States v. Reese</u>, No. 2:12-CR-87-WKW, 2020 WL 3621316, at *1 (M.D. Ala. July 2, 2020) (quoting <u>United States v. Webb</u>, 565 F.3d 789, 792 (11th Cir. 2009)) (addressing the right to counsel in the context of a § 3582(c)(2) motion).  The Court finds that appointment of counsel is not necessary. Gray has shown the ability to effectively set forth the facts, claims and argument and otherwise prosecute this action. Additionally, the claims are not factually and legally complex or exceptional such that appointment of counsel would be warranted.

and killed a bank employee who was kneeling on the floor. After obtaining money from the vault, Gray and Jackson fled with two other codefendants.

Gray and her codefendants were indicted in a multiple count indictment for offenses related to the bank robbery. She pled guilty to Count 1 of an Information charging bank robbery in violation of 18 U.S.C. § 2113(a) and to Count 3 of the Indictment charging possession of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). In May 2002, she was sentenced to a total term of 360 months composed of 240 months for the bank robbery conviction and 120 months, consecutive, for the firearms conviction (doc. 215). Because the firearm was discharged during the offense, the 120-month sentence was mandatory. 18 U.S.C. § 924(c)(1)(A)(iii).

Gray was also arrested by Hale County, Alabama authorities and charged with capital murder and robbery. In January 2002, she pled guilty to murder and was sentenced to life with the benefit of parole. The state circuit court ordered her sentence to run concurrently with any yet to be imposed federal sentence and ordered that the state sentence would be served in the federal institution (doc. 400, p. 9-10).  She was paroled in 2016.

Gray is now 43 years old.  Her release date is June 3, 2028.  She has served approximately 20 years of her sentence.  Gray's motion was mailed while she was incarcerated at FCI Hazelton, in Bruceton Mills, West Virginia (doc. 428, p. 21).  She is now incarcerated at Federal Medical Center Lexington Satellite Camp, in Lexington, Kentucky (doc. 430).  At present, no inmates are positive for Covid-19.  Four staff members are positive for Covid-19. Nine inmates have died but no staff members. Six-hundred and four inmates and eight-nine staff members have recovered from Covid-19. https://www.bop.gov/coronavirus/ (last visited September 7, 2021).

II.     Motion for Reduction of Sentence and/or Compassionate Release

A.     Statutory prerequisites

In relevant part, the compassionate release provision of 18 U.S.C. § 3582(c)(1), as amended by the First Step Act of 2018, provides that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment" if certain other conditions are met. 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

Gray submitted a request to the Warden at FCI Hazelton to file a motion on her behalf. The request was denied January 10, 2021 (doc. 428-3, Warden's denial). Gray's certificate of service states that she placed the Motion for reduction of sentence in the prison mailbox on April 12, 2021 (doc. 428, p. 21). The motion was docketed April 28, 2021. Although the Court does not know when the Warden received Gray's request, it must have been received before January 10, 2021, the date of denial. Since more than thirty days lapsed before Gray mailed[3] her motion on April 12, 2021, she has met this statutory prerequisite for consideration.

B.     Analysis

Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010); United States v. Shaw, 711 Fed. Appx. 552, 554-55 (11th Cir. 2017) (same).

---

[3] See Burke v. United States, 762 Fed. Appx. 808, 809–10 (11th Cir. 2019) ("Under the prison mailbox rule, an inmate's pro se § 2255 motion is deemed filed on the date it was delivered to prison authorities for mailing. Absent evidence to the contrary, we presume that a movant delivered his motion to prison authorities on the date he signed it. The government bears the burden of proving that the motion was delivered to prison authorities on a different date.") (citing Jeffries v. United States, 748 F.3d 1310, 1314 (11th Cir. 2014)).

Specifically, the district court may not modify a term of imprisonment once it has been imposed

except as set out in 18 U.S.C. § 3582(c). See United States v. Pubien, 805 Fed. Appx. 727, 729

(11th Cir. Feb. 25, 2020).

In relevant part,[4] 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, provides

that the district court "upon motion of the defendant after the defendant" has met certain

statutory prerequisites, see supra, ¶ A, "may reduce the term of imprisonment (and may impose a

term of probation or supervised release with or without conditions that does not exceed the

unserved portion of the original term of imprisonment), after considering the [applicable] factors

set forth in 18 U.S.C. § 3553(a)", if the district court finds that "extraordinary and compelling

reasons warrant such a reduction" and the reduction is "consistent with applicable policy

statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

"Extraordinary and compelling" reasons are not defined in the statute. 18 U.S.C. §

3582(c)(1)(A). Instead, Congress gave the Sentencing Commission the duty to promulgate

general policy statements regarding sentence modifications pursuant to 18 U.S.C. §

3582(c)(1)(A) and stated that the Commission "shall describe what should be considered

extraordinary and compelling reasons for sentence reduction, including criteria to be applied and

a list of specific examples." 28 U.S.C. § 994(t). The applicable Policy Statement is found at

U.S.S.G. § 1B1.13. United States v. Bryant, 996 F. 3d 1243 (11th Cir. 2021). The Application

Notes to the Policy Statement include four examples of extraordinary and compelling reasons for

a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i)

In that regard, Gray alleges that

---

[4] Since Gray is 43 years old, only subparagraph (i) could apply.  Subparagraph (ii) provides for a
reduction of sentence when "the defendant is at least 70 years of age, has served at least 30 years
in prison" and other factors are met. 18 U.S.C. § 3582(c)(1)(A)(ii).

> The basis for Petitioner's request is the serious medical conditions that she have that can deteriorate physical health and greatly diminishes her ability to provide self-care within the closed-space communal environment of the correctional facility setting and per CDC guidance, several of her conditions place her at high-risk and vulnerable to be easily infected by COVID-19. Petitioner has Asthma, Rheumatoid Arthritis, Osteoporosis, Glaucoma, Seizure Disorder, Vitamin D deficiency. Petitioner also is a former smoker complicating her breathing and diminishing lung capacity. Petitioner also takes medication that the CDC list that weakens her ability to fight infections.

(Doc. 428, p. 5; p. 10-16); (doc. 429, p. 3) (asserting that health issues make her "easily to fall prey to severe sickness or death if exposed to another variant of Covid"). Gray argues that the Centers for Disease Control and Prevention considers her medical conditions and certain medications as placing her at high-risk of serious illness or fatality if she contracts Covid 19 (doc. 428, p. 5, 7). Gray argues that the presence of Covid 19 in prisons and the prison communal living environment increase her risk of contracting the virus. She also argues that early release from prison or a reduction of sentence such that she may be immediately placed on home confinement,[5] where she can better protect herself from the virus, is necessary to prevent her sentence from becoming a death sentence (doc. 428, doc. 429, p. 2-3).

According to her 2020 and 2021 medical records, Gray has a seven-year diagnosis of rheumatoid arthritis or polyarthritis affecting multiple joints for which she takes hydroxychloroquine, methotrexate sodium, and various NSAID pain medications (doc. 428-4, p. 7, 9-11, 54-55). Also, she is monitored for a specific type of retinal damage which may occur as a side-effect of hydroxychloroquine (Id., p. 39, 53).

---

[5] Gray references the Bureau of Prisons home confinement program (doc. 428, p. 18; doc. 429, p. 3). Under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516, the Director of the BOP may place inmates on home confinement for a longer period than previously authorized by statute. However, the CARES Act

Gray has been treated for asthma for the past fifteen years (Id.).  At present, she uses an albuterol inhaler as needed, but she has been intermittently prescribed mometasone furoate to inhale daily (Id., p. 34, 36, 55; doc. 428-1, p. 4). Gray reported no major attack for the past five years, and the doctor noted her asthma as stable (doc. 428-4, p. 10).  Also, Gray stopped smoking in 2000 (Id., p. 41).

In 2021, Gray was diagnosed with mild osteoporosis. Her vitamin D level was noted as "barely in the normal range" and she was prescribed Vitamin D (cholecalciferol) to take daily (Id., p. 11-13).  In 2019, Gray was diagnosed with glaucoma for which she takes latanoprost drops (Id., p. 38; doc. 428-1, p.4).  Gray also reports a history of seizure disorder.  In 2010, she reported that her last seizure was six years ago (doc. 428-4, p. 35).  In 2013, she reported that her last seizure was two to three years ago (Id., p. 3).  In 2019, Gray reported that her last seizure was in 2017 (Id., p. 40).  In February 2021, Gray reported a history of seizure disorder, but was not prescribed any medication (Id., p. 14-15). Gray's medical records indicate that she has received both doses of the Pfizer vaccine for Covid 19 (Id., p. 16-17).

Gray also argues that her medications are on the CDC's list of medications which weaken the ability to fight infections and increase the risk of a severe or life-threatening Covid 19 infection (doc. 428, p. 3).  Gray did not specifically identify which medications allegedly have weakened her immune system.  However, she appears to mean the medications for asthma and rheumatoid arthritis.

Based upon CDC guidance, Gray's asthma if diagnosed as moderate to severe or uncontrolled and rheumatoid arthritis with prolonged use of corticosteroids which may weaken

---

did not give the Court authority to grant motions to serve the remainder of a sentence on home confinement, or to direct or order the BOP to place a prisoner on home confinement.

the immune system,[6] during the Covid 19 pandemic, may allow her to fall within the criteria of

Application Note 1(A)(ii)(I), [7] which provides that an extraordinary and compelling reason exists

if the defendant is -

> (I) suffering from a serious physical or medical condition, . . . that substantially
> diminishes the ability of the defendant to provide self-care within the environment
> of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

However, even if Gray met her burden to show extraordinary and compelling reasons

which warrant a sentence reduction under Application Note 1(A)(ii)(I), the Court must still

weigh the applicable sentencing factors. 18 U.S.C. § 3582(c)(1)(A) (the court . . .  may reduce

---

[6] "People with moderate-to-severe or uncontrolled asthma are more likely to be hospitalized from COVID-19."  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited September 7, 2021).  "Prolonged use of corticosteroids or other immune weakening medicines can lead to secondary or acquired immunodeficiency." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited September 7, 2021).

[7]  Gray does not allege that she has a terminal illness. U.S.S.G. § 1B1.13, cmt. n. 1(A)(i). She does allege that she has a serious functional or cognitive impairment, and that she is experiencing deteriorating physical or mental health because of the aging process, such that her ability to provide self-care in prison is substantially diminished (doc. 428, p. 2).  U.S.S.G. § 1B1.13, cmt. n. 1(A) (ii) (II) & (III).  But Gray is 43 years old, and she has completed numerous programs, many of which require significant cognitive ability. Therefore, these allegations, without supporting medical records, do not appear viable.  She does not allege that her family circumstances meet the criteria in Application Note 1(C), or that she meets the age requirement in Application Note 1(B) (at least 65 years old). U.S.S.G. § 1B1.13, cmt. n. 1(B) & (C).  Application Note 1(D) provides that extraordinary and compelling reasons "other than" or in combination with the reasons in Application Notes 1(A)-(C), may exist. U.S.S.G. § 1B1.13, cmt. n.1(D). The Court of Appeals for the Eleventh Circuit recently clarified that these reasons "other than" or "in combination with" are limited to those reasons as determined by the Director. United States v. Bryant, 996 F. 3d at 1247-1248.  In that regard, the Bureau of Prisons Program Statement 5050.50, which applies to reductions of sentence under § 3582(c)(1)(A), in relevant part, provides for consideration of a reduction of sentence where the inmate has a medical condition from which they will not recover, and that renders the inmate "completely disabled … or capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." The evidence does not indicate that Pittman falls within these parameters.

the term of imprisonment . . . **after** considering the [applicable] factors set forth in 18 U.S.C. § 3553(a).") (emphasis added).  "The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims."  United States v. Granda, 852 Fed. Appx. 442, 445 n.1 (11th Cir. 2021) (citing 18 U.S.C. § 3553(a)).

The Court has considered the relevant factors.[8]  With regard to the nature and circumstances of the offense and Gray's history and characteristics, the Court finds that these factors do not weigh in favor of a reduction in sentence. Specifically, Gray and her codefendants planned a bank robbery and acquired weapons to facilitate the robbery. She then carried a weapon into the bank and guarded the door.  Her codefendant Jackson shot and killed a bank employee who was kneeling on the floor.  Gray and Jackson then left the bank and fled with their other codefendants.  In this circumstance, early release would not meet the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense", or to adequately deter criminal conduct and "protect the public

---

[8]  "Even where consideration of the § 3553(a) factors is mandatory, the district court need not state on the record that it has explicitly considered each of the § 3553(a) factors or discuss each of them. … Rather, the district court's acknowledgment that it considered the § 3553(a) factors and the parties' arguments is sufficient." United States v. Granda, 852 Fed. Appx. at 446 (citations omitted).

from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A), (B), & (C).  Accordingly,

Gray's motion for compassionate release is due to be denied.

DONE this the 14th day of September 2021.


**s / Kristi K. DuBose**
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**