IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) Criminal Action No. 2:01-00007-KD |
| TABITHA BURKS GRAY, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This action is before the Court on the "Emergency Motion to Reconsider and Expedite a Modification in Sentence pursuant to 18 USC 3582 in light of Evidential Medical Records pertinent to Court's Mar 14, 2022 Decision" and medical records (docs. 436, 436-1); "Motion for Reduction of Sentence pursuant to 18 USC 3582 and Decision Expedited", Warden's denial letter, Inmate Profile, and medical records (docs. 440, 440-1, 440-2, 440-3); and letter requesting an expedited decision (doc. 454).

The Court construes[1] the two motions and the letter as a single motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Upon consideration, and for the reasons set forth herein, the motion is DENIED.

I.  Background

In October 2001, Gray and her co-defendants robbed a bank in Greensboro, Alabama. Gray and co-defendant Felicia Jackson entered the bank wearing masks and carrying shotguns.

---

[1] Daniele v. United States, 740 Fed. Appx. 973, 977 (11th Cir. 2018) ("… we have held that pro se 'pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'") (quoting Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)).

They shouted orders to the employees. While walking to the vault, co-defendant Jackson shot and killed a bank employee who was kneeling on the floor. After obtaining money from the vault, Gray and Jackson fled with two other codefendants.

Gray and her codefendants were indicted in a multiple count indictment for offenses related to the bank robbery. She pled guilty to Count 1 of an Information charging bank robbery in violation of 18 U.S.C. § 2113(a) and to Count 3 of the Indictment charging possession of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). In May 2002, she was sentenced to a total term of 360 months composed of 240 months for the bank robbery conviction and 120 months, consecutive, for the firearms conviction (doc. 215). Because a firearm was discharged during the offense, the 120-month sentence was mandatory. 18 U.S.C. § 924(c)(1)(A)(iii).

Gray was also arrested by Hale County, Alabama authorities and charged with capital murder and robbery. In January 2002, she pled guilty to murder and was sentenced to life with the benefit of parole. The state circuit court ordered her sentence to run concurrently with any yet to be imposed federal sentence and ordered that the state sentence would be served in the federal institution (doc. 400, p. 9-10). She was paroled in 2016.

Gray is now 45 years old. Her release date is June 3, 2028. She has served approximately 23 years of her 30-year sentence.

Gray is incarcerated at Federal Medical Center Lexington Satellite Camp, in Lexington, Kentucky. The facility is operating at Level One, the least restrictive Operational Level for Covid 19 precautions. At present, no inmates or staff members are positive for Covid-19. One inmate has a test pending. During the pandemic, eleven inmates died at the Medical Center. https://www.bop.gov/coronavirus/ (last visited June 27, 2023).

II.     Letter requesting an expedited decision

In the letter, Gray points out that the United States Sentencing Commission amended the Policy Statement for motions for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), U.S.S.G. § 1B1.13, to include new extraordinary and compelling reasons for compassionate release (doc. 454, p. 2-3). Gray argues that she was a victim of sexual assault by a correctional officer and has served more than ten years, and therefore her circumstances fall within the new reasons, which gives the Court has authority to grant release.

The alleged reasons are found in subsection (b)(4) for a "Victim of Abuse"[2] and subsection (b)(6) captioned, "Unusually Long Sentences." Each subsection lists specific requirements.[3]   The amendments were adopted by the Sentencing Commission and submitted to Congress on April 27, 2023.

However, the amendments do not take effect until November 1, 2023.  United States Sentencing Commission, Amendments to the Sentencing Guidelines, USSG § 1B1.13

---

[2] "(b)(4) Victim of Abuse.—The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of: (A) sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or (B) physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1 (Application Instructions); that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant. For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger."

[3] "(b)(6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances."

https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 (last viewed June 26, 2023).

    III.    Motion for Reduction of Sentence and/or Compassionate Release

    A.    Statutory prerequisites

In relevant part, the compassionate release provision of 18 U.S.C. § 3582(c)(1), as amended by the First Step Act of 2018, provides that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment" if certain other conditions are met. 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

Gray submitted the Warden's denial of her request to file a motion on her behalf (doc. 440-1). The denial was signed October 31, 2022. Thus, at the latest, the Warden received her request on October 31, 2022. Therefore, Gray's motion, signed December 7, 2022,[4] was filed after the lapse of 30 days from the Warden's receipt of her request. Gray meets the statutory prerequisite for filing her motion.

    B.    Analysis

Previously, the Court denied Gray's second motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (doc. 431, September 14, 2021). In that order, the Court stated that

---

[4] Houser v. United States, 808 Fed. Appx. 969, 971 (11th Cir. 2020) ("Under the prison mailbox rule, a pro se prisoner's § 2255 motion is deemed filed on the date the prisoner delivers the motion to prison authorities for mailing" and "absent evidence to the contrary," the district courts may "assume that a prisoner delivered a filing to prison authorities on the date he signed it.") (Citations omitted).

4

> Based upon CDC guidance, Gray's asthma if diagnosed as moderate to severe or uncontrolled and rheumatoid arthritis with prolonged use of corticosteroids which may weaken the immune system, [ ] during the Covid 19 pandemic, may allow her to fall within the criteria of Application Note 1(A)(ii)(I), [ ] which provides that an extraordinary and compelling reason exists if the defendant is –
>
>> (I) suffering from a serious physical or medical condition, . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

(Doc. 431, p. 6-7) (footnotes omitted).[5]

Gray now provides medical records to support her position that her asthma is severe and uncontrolled (doc. 436, p. 2) (doc. 436-1) (doc. 440) (doc. 440-3). She also argues that based on guidance from the Centers for Disease Control and Preventions several of her medical conditions "meet the burden of extraordinary and compelling reasons" (doc. 436, p. 2). Specifically, osteoporosis, rheumatoid arthritis, seizure disorder, vitamin D deficiency, glaucoma, "Immunocompromised state from medication to treat and control Rheumatoid Arthritis and Osteoporosis", "prolonged and continual use of Prednisone and Steroid injections", "Plaquenil for RA which causes bronchospasms and weaken respiratory system and aggravates asthma" and status as a former smoker (Id.). She also points out that she contracted Covid 19 in January 2022 and since then "she has suffered more asthma attacks, trouble breathing and [is] working with the medical department to control this as much as possible in the environment that she is in, she

---

[5] Gray argues that the Court denied her motion "stating the Petitioner did not provide proof that her asthma is severe or uncontrolled to be in accordance with guidelines that will satisfy the burden." (doc. 436, p. 5) (underlining in original). Gray is incorrect. The Court stated that certain conditions and medications "during the Covid 19 pandemic, **may** allow her to fall within the criteria of Application Note 1(A)(ii)(I)" (doc. 431) (emphasis added)

more frequently uses her inhaler and suffers bad coughs, shortness of breath and trouble sleeping." (doc. 436, p. 2). She argues that because of the lingering effects of Covid 19 and the damage to her lungs, "re-infection could be more severe the next time" should she contract Covid 19 again. Gray also argues that her severe depression and consequent weight loss brought about by her son's death, have weakened her immune system (Id.; doc. 440, p. 3-4). Gray also reports that she is healing from surgery, which also contributes to her immuno-compromised status (doc. 440, p. 2). Gray argues that because of her immunocompromised status, she cannot protect herself from Covid 19 in the communal prison environment, which in combination with her severe asthma and lingering effects of Covid 19, creates an increased risk of serious illness or death, should she contract Covid 19.

However, on May 11, 2023, the United States Department of Health and Human Services ended the federal Public Health Emergency for COVID-19. Fact Sheet: End of the COVID-19 Public Health Emergency, U.S. Dept. Health & Hum. Servs. (May 9, 2023), https://www.hhs.gov-/about/news/2023/05/09/fact-sheet-end-of-the-covid-19-public-health-emergency.html. Also, COVID-19 is well controlled at FMC Lexington. There are no active cases among inmates or staff members as of June 27, 2023. BOP COVID-19 Statistics, Fed. Bureau of Prisons https://www.bop.gov/coronavirus/covid19_statistics.html.

To obtain a sentence reduction based on "extraordinary and compelling reasons," the reduction must be "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Court of Appeals for the Eleventh Circuit has held that Policy Statement U.S.S.G. § 1B1.13 applies to motions pursuant to 18 U.S.C. § 3582(c)(1)(A). United States v. Bryant, 996 F. 3d 1243, 1262 (11th Cir. 2021) (holding that "1B1.13 is an applicable policy statement that governs all motions under Section

3582(a)(1)(A)"). However, outside the Covid 19 pandemic, Gray has not shown that her medical conditions are extraordinary and compelling reasons, since they do not appear to "substantially diminish" her ability to "provide self-care within the environment of a correctional facility" 18 U.S.S.G. § 1B1.13, cmt. n. 1(A)(ii). Gray's inmate profile shows that few physical restrictions resulting from her medical conditions and that her medical conditions do not impair her ability to work while incarcerated. Gray requires a lower bunk, is restricted from lifting over 15 pounds, and should wear "soft shoes only", but is otherwise cleared for regular duty (doc. 440-2). Gray presently works as the town driver, a position of trust, and hopes to be given approval to drive other inmates to appointments outside of the camp (doc. 440-3).

Since Gray has failed to show extraordinary and compelling reasons which would warrant a reduction in sentence, the Court need not address whether the relevant factors in 18 U.S.C. § 3553(a) weigh in favor of a reduction,[6] or whether Gray's release would not pose a danger to the safety of any other person or the community as provided in 18 U.S.C. § 3142(g). See United States v. Tinker, 14 F.4th 1234, 1237–39 (11th Cir. 2021). Accordingly, Gray's motion for compassionate release is denied.

**DONE** and **ORDERED** this 30th day of June 2023.

                                             **s / Kristi K. DuBose**
                                             **KRISTI K. DuBOSE**
                                             **UNITED STATES DISTRICT JUDGE**

---

[6] The Court previously considered the relevant factors, found they did not weigh in favor of a reduction of sentence, and denied Gray's motion (doc. 431).