# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) Criminal Action No. 2:01-00007-KD |
| TABITHA BURKS GRAY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This action is before the Court on Defendant Tabitha Burks Gray's Motion for Compassionate Release/Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), supplemental motion, and documents in support (docs. 471, 476, 477, 484, 485 (Under Seal), 487) and the United States' response, supplemental response, and documents in support (docs. 478, 479, 481 (Under Seal), 488).

I. Background

In October 2000, Gray and her co-defendants robbed a bank in Greensboro, Alabama. Gray and co-defendant Felicia Jackson entered the bank wearing masks and carrying shotguns. They shouted orders to the employees. While walking to the vault, co-defendant Jackson shot and killed a bank employee who was kneeling on the floor. After obtaining money from the vault, Gray and Jackson fled with two other codefendants.

In January 2001, Gray and her codefendants were indicted in a multiple count indictment for offenses related to the bank robbery. She pled guilty to Count 1 of an Information charging bank robbery in violation of 18 U.S.C. § 2113(a) and to Count 3 of the Indictment charging possession of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). In May 2002, she was sentenced to a total term of 360 months composed of 240 months for the

bank robbery conviction and 120 months, consecutive, for the firearms conviction (doc. 215). Because a firearm was discharged during the offense, the 120-month sentence was mandatory. 18 U.S.C. § 924(c)(1)(A)(iii).

Gray was also arrested by law enforcement in Hale County, Alabama and charged with capital murder and robbery. In January 2002, she pled guilty to murder and was sentenced to life with the benefit of parole. The state circuit court ordered her sentence to run concurrently with any yet to be imposed federal sentence and ordered that the state sentence would be served in the federal institution (doc. 400, p. 9-10). The State of Alabama paroled Gray in 2016.

Gray is now 46 years old. Her release date is June 3, 2028. She has served approximately 24 years of her 30-year sentence.[1] She is presently incarcerated at FCI Hazelton in Bruceton Mills, West Virginia.

II. Motion for Compassionate Release/Sentence Reduction

A. Statutory prerequisites

In relevant part, the compassionate release provision of 18 U.S.C. § 3582(c)(1), as amended by the First Step Act of 2018, provides that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment" if certain other conditions are met. 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

In June 2023, Gray submitted a request to the Warden for a reduction of sentence based on assault by a Bureau of Prisons correctional officer (doc. 479-1). Her request was denied (doc.

---

[1] Gray was arrested and placed in federal custody in February 2001.

2

479-2). The United States concedes that Gray exhausted her administrative remedies (doc. 479, p. 2-3). Therefore, Gray has met the statutory prerequisite for consideration of her Motion.

B. Analysis

"A district court has no inherent authority to modify a defendant's sentence; it may do so 'only when authorized by a statute or rule.'" United States v. Ratliff, No. 24-10752, 2024 WL 4371658, at *3 (11th Cir. Oct. 2, 2024) (quoting United States v. Puentes, 803 F.3d 597, 605–06 (11th Cir. 2015); United States v. Shaw, 711 Fed. Appx. 552, 554-55 (11th Cir. 2017) (same). Title 18 U.S.C. § 3582(c)(1)(A)(i) provides that "upon motion of the defendant after the defendant" has met certain statutory prerequisites, see supra, ¶ A, a district court may "reduce a term of imprisonment when three requirements are satisfied: (1) there are 'extraordinary and compelling reasons' for granting a sentence reduction; (2) 'the § 3553(a) sentencing factors favor' a reduction; and (3) awarding a sentence reduction 'wouldn't endanger any person or the community'." Ratliff, 2024 WL 4371658, at *3 (quoting United States v. Tinker, 14 F.4th 1234, 1237 (11th Cir. 2021)). The statute also requires that any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Overall, "[i]f the district court finds that a movant failed to satisfy even one of these requirements, it cannot grant relief and need not analyze the remaining requirements." Ratliff, 2024 WL 4372658 at *3 (citing United States v. Giron, 15 F.4th 1343, 1347–48 (11th Cir. 2021)).

1. Extraordinary and compelling reason

"Extraordinary and compelling" reasons for a reduction of sentence are not defined in the statute. 18 U.S.C. § 3582(c)(1)(A). Instead, Congress gave the Sentencing Commission the duty to promulgate general policy statements regarding sentence modifications pursuant to 18 U.S.C.

§ 3582(c)(1)(A) and stated that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).  The applicable Policy Statement is found at U.S.S.G. § 1B1.13 (effective November 1, 2023). <u>United States v. Bryant</u>, 996 F. 3d 1243 (11th Cir. 2021).  Relevant here, the Policy Statement provides as follows:

> b) Extraordinary and Compelling Reasons. Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof: …
>
> (4) Victim of Abuse. The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:
>
>> (A) sexual abuse involving a "sexual act," as defined in 18 U.S.C. 2246(2) (including the conduct described in 18 U.S.C. 2246(2)(D) regardless of the age of the victim);  …
>
> that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.
>
> For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

U.S.S.G § 1B1.13(b)(4).

Gray argues that she has established an extraordinary and compelling reason for a reduction of sentence because she is the victim of sexual abuse by a correctional officer while incarcerated with the Bureau of Prisons (doc. 471, 476). Gray's documents verify her status (docs. 484, 485).

The United States concedes that Gray is eligible for consideration of a reduction of sentence under the Sentencing Commission's Policy Statement. The US acknowledges that Gray was a victim of sexual abuse while in federal custody serving the term of imprisonment which

4

she now seeks reduce (doc. 479, p. 1-2) (citing U.S.S.G. § 1B1.13(b)(4)).  The United States also provides documents to substantiate the sexual abuse (doc. 481, Under Seal).

As previously stated, the Court may "reduce a term of imprisonment when three requirements are satisfied: (1) there are 'extraordinary and compelling reasons' for granting a sentence reduction; (2) 'the § 3553(a) sentencing factors favor' a reduction; and (3) awarding a sentence reduction 'wouldn't endanger any person or the community'." Ratliff, 2024 WL 4371658, at *3.  In view of the foregoing, the Court finds that Gray has satisfied the first of the three requirements because she has established an extraordinary and compelling reason.

2. The relevant factors in 18 U.S.C. § 3553(a)

In relevant part, section 3553(a) requires the Court to consider, among other factors, the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. 18 U.S.C. § 3553(a)(2). The statute also requires consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" 18 U.S.C. § 3553(a)(1).

Gray argues that the relevant factors weigh in favor of a reduction of sentence (docs. 471, 476, 487).  She asserts that the time she has served, rendered more punitive by the sexual abuse, is adequate to meet the factors in paragraph (a)(2). She also argues that her history and characteristics – a first-time offender with no violent criminal history - weigh in favor of a reduction. Gray acknowledges the serious nature and circumstances of her offense but points to her remorse for her conduct, the length of time she has served, and her lack of knowledge that her co-defendant would discharge the firearm and kill the bank employee (doc. 471, p. 4-6) (see also doc. 435-3).

The United States argues that the relevant sentencing factors in 18 U.S.C. § 3553(a) do not weigh in favor of granting Gray's motion (doc. 479). The United States argues that the sentence imposed remains appropriate in view of the seriousness of the offense and Gray's history and characteristic and still meets the purposes of the factors in 18 U.S.C. § § 3553(a).

Previously, in September 2021, the Court found that the relevant factors in 18 U.S.C. § 3553(a) did not weigh in favor of a reduction of sentence and denied Gray's prior motion for compassionate release (doc. 431). Although Gray's history and characteristics and the nature and circumstances of her offense remain unchanged, she has served three more years. At this time, having served almost 24 years, a reduction of sentence to time served would meet the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. 18 U.S.C. § 3553(a). Therefore, the Court finds that Gray has satisfied the second of the three requirements. See Ratliff, 2024 WL 4371658, at *3.

Also, the basis for the request for compassionate release were not the same. The abuse Gray suffered at the hands of the BOP officials has made her 24 years in custody more punitive than the law or society allows. The Court is not unmindful of the suffering Gray's co-defendant inflicted upon the bank employee's family and friends. And while the law holds Gray culpable, a sentence of 24 years meets the objectives of punishment and deterrence.

3. <u>Danger to the safety of any other person or to the community</u>

The Policy Statement indicates that the Court may reduce a term of imprisonment if it determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(a)(2). The United States argues that Gray remains a danger to the community (doc. 479). In support, the United States

points to the nature and characteristics of Gray's offense, specifically that a bank employee was killed, and her disciplinary record (docs. 479-2; 479-3).

In response, Gray again acknowledges the nature and circumstances of her offense and her history and characteristics but asserts that her extensive programming and rehabilitation while in prison indicate that she is not a danger (doc. 487). Gray admits the content of her disciplinary record but argues that most of the incidents were early in her incarceration, that some disciplinary reports were caused by mistakes from which she learned, and others were the result of harassment by persons who became aware of her charges against the correctional officer for sexual abuse.[2] Gray also asserts that her recent years of imprisonment have been served at a minimum security prison camp where she worked as an unsupervised driver of a passenger van Gray also points out that she will be subject to five years of supervision upon release by which the Court may monitor her return to the community (doc. 487).

The Court has considered the relevant factors in 18 U.S.C. § 3142(g)(1)-(4), which include: (1) the nature and circumstances of the offenses; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by defendant's release. 18 U.S.C. § 3142(g)(1)-(4). The Court acknowledges the serious nature and circumstances of Gray's offense and her history and characteristics. The Court has also considered Gray's extensive programming and rehabilitation (see infra, § B.4).

Importantly, the Court has reviewed Gray's disciplinary report (doc. 479-3). Most of the infractions occurred between 2002 and 2005, with the most serious – fighting – having occurred

---

[2] Gray explains that after the abuse occurred, she participated in a training video which was used by the BOP to train its correctional officers regarding inmate abuse. She alleges that as a result, she was harassed by correctional officers who became aware of the abuse and the consequent investigation of a fellow correctional officer (docs. 471, 476, 487)

in 2003. Gray had one infraction in 2006, none in 2007, another in 2008, and five years later in 2013; all for which she intermittently lost commissary privileges. Four years later in 2017, she "altered" a hat by cutting the "top out of it" and lost commissary and phone privileges for 30 days. In 2018, she admitted to finding and using a cell phone. She called her son five times. Consequences were more severe. She lost good conduct time, lost her job and phone privileges for six months, and was placed in disciplinary segregation.[3] In 2019, she denied making a false statement, but lost email privileges for 15 days. In 2023, she refused to obey an order and lost commissary privileges for 15 days. (Id.)

However, the fact that Gray committed these disciplinary infractions, and the United States' argument that she is a danger to the public (doc. 479-2), is offset by her FSA Recidivism Risk Assessment by the BOP (doc. 488-1). The Court ordered the United States to provide Gray's current Risk Recidivism Level and Security Classification (doc. 486). According to the FSA Risk Assessment provided by the United States, as of May 2024, Gray was rated "minimum" for inmate "risk level" and "minimum" for inmate "security level" (doc 488-1).

Gray's current release date is June 3, 2028. Serving another three and half years in prison would not reduce the risk of danger or risk of recidivism because Gray is already at the lowest rating – minimum. Therefore, the Court finds that Gray has satisfied the last of the three requirements. See Ratliff, 2024 WL 4371658, at *3.

    4. Rehabilitation

---

[3] The number of days is not clear. One entry showed: "DS 15 days … from: 08-02-2018 Thru" 08-16-2018", another showed 14 days with the notation "DS suspended pending 180 days of clear conduct was imposed to deter future misconduct", but another showed "She has been in the SHU since 05-24-2018" (doc. 479-3, p. 6). But in either scenario, Gray was placed in disciplinary segregation.

The Policy Statement also indicates that rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction" of sentence is warranted. U.S.S.G. § 1B1.13(d). In that regard, Gray states that she has recognized the seriousness of her offense and taken the initiative to rehabilitate herself (doc. 471, p. 3). She also states that she has completed over "100 programs to include a college degree, several apprenticeships & vocational trades and a program where she 'mentored' young inmates" (doc. 487, p. 3). Gray reports that she has a "B.A. Degree in Ministerial Studies from ICCS" (doc. 428-5, p. 2). "ICCS" appears to mean International Christian College and Seminary, an institution which offers correspondence educational programs for inmates. https://iccscampus.org/. Gray provides the Court with copies of her GED Certificate and numerous Certificates of Completion for a wide array of vocational, educational, religious, and self-improvement programs (doc. 428-5, p, 7-45).  Her resume indicates that she has worked consistently during incarceration primarily in clerical, payroll, educational, and safety-related positions (doc. 428-5, p. 4).

Most recently, Gray's job was driving a passenger van at a minimum-security prison camp at FCI Lexington (doc. 487, p. 1-6). The record indicates that Gray has made extensive efforts to rehabilitate herself and to develop work skills in preparation for return to her family and community.  Therefore, her rehabilitative efforts weigh in favor of a finding that she is not a danger to the community and in favor of a reduction of sentence.

5. <u>Release plan</u>

9

Gray reports that she will live with her parents in Bessemer, Alabama upon release (doc. 428-1). The release plan indicates she will have strong family support by her siblings and sons[4] upon return (Id.) (see doc. 428-5, p. 6).

III. Conclusion

Upon consideration, and for the reasons set forth herein, Gray's Motion is GRANTED. Her sentence is reduced to time served, subject to the following provision: This Order is stayed for up to seven (7) days to provide time to verify and implement her release plan, establish supervision with the United States Probation Office, and make appropriate travel arrangements.

The Clerk is directed to provide a copy of this Order to the United States Probation Office for the Southern District of Alabama to expedite Gray's release on conditions of supervision.

According to the BOP website, Gray is now incarcerated at FCI Hazelton. The Clerk is directed to mail a copy of this Order to Gray, Register Number 07754-003 at FCI Hazelton, Federal Correctional Institution, Satellite Camp, Secure Female Facility, P.O. Box 3000, Bruceton Mills, West Virginia 26525.

DONE and ORDERED this the 17th December 2024.

s / Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[4] Gray was the mother of three children at the time of her offense. Her son Jesse Lee Gray died in December 2021. (doc. 435).